UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| DANIEL LIPSKY,<br><br>                  Plaintiff,<br>vs.<br><br>NATE CRONIN, BILL WAINMAN, MICHAEL CLOSE; and CITY OF HOT SPRINGS, SOUTH DAKOTA,<br><br>                  Defendants. | 5:22-CV-5039-LLP<br><br>**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

Pending before the Court is a Motion to Dismiss Plaintiff, Mr. Daniel Lipsky's, complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure that was filed by Defendants Nate Cronin, Bill Wainman, Michael Close and City of Hot Springs, South Dakota. (Doc. 6). For the following reasons, Defendant's Motion to Dismiss is granted in part and denied in part.

**I.    Facts**

The following facts appear in Mr. Lipsky's complaint and the exhibits attached to Mr. Lipsky's complaint. On December 17, 2019, Officer Cronin was working the overnight shift. (Doc. 1-1, Lipsky Discovery Packet, Arrest Report). (*Id.*). He was sitting stationary at the Y-L Saddlery along the Highway 18 bypass on the outskirts of Hot Springs, South Dakota, facing eastbound. (*Id.*). Around 2:18 a.m., he observed a semi-truck driven by Mr. Lipsky pass him on the Highway 18 bypass. (*Id.*). The semi-truck appeared to Officer Cronin to be travelling at a high rate of speed. (*Id.*). The speed limit for semi-trucks at that point was 35 miles per hour and for other vehicles, it was 55 miles per hour. (*Id.*).

At the top of Highway 18 was a brake check stop for trucks to test their brakes due to the grade of the hill. (*Id.*; Doc. 1-1, 10-7-20 Lipsky Court Trial Transcript at 7:15-20). Initially, when Officer Cronin opened his radar, the speed of the semi-truck registered at 60 miles per hour. (Doc. 1-1, Lipsky Discovery Packet, Arrest Report). Officer Cronin left his radar open and by the bottom of the hill at the junction of the bypass and Highway 71, he clocked Mr. Lipsky driving at 65 miles per hour. (*Id.*; Lipsky Court Trial Transcript at 9:12-17). Officer Cronin activated his emergency lights near the truck runaway on the Bypass. (*Id.*). The semi continued on at its speed and

1

gradually started slowing down. (*Id.*). A small car passed Mr. Lipsky and Officer Cronin as they passed a residential neighborhood near S. River Street and S. Chicago Street. (*Id.*). That was the only vehicle in the area at the time. (*Id.*).

Mr. Lipsky came to a complete stop at the bottom of the bypass on Jensen's Highway across from the Dairy Queen. (*Id.*; Lipsky Court Trial Transcript at 9:4-7). Officer Cronin turned on his body camera when he exited his patrol vehicle, but it was cold outside and he zipped up his jacket, obscuring the camera. (Doc. 1-1, Lipsky Court Trial Transcript 12:3-12). When Officer Cronin began speaking with Mr. Lipsky, he thought him to be slurring his words and his eyes droopy. (Doc. 1-1, Lipsky Discovery Packet, Arrest Report). Officer Cronin advised Mr. Lipsky that he was stopped for speeding and had Mr. Lipsky come back to his patrol vehicle. (Docs. 1 at 5; 1-1, Arrest Report). When asked by Officer Cronin if he stopped at the brake check at the top of the bypass, Mr. Lipsky said that he could not remember. (Doc. 1-1, Arrest Report). Mr. Lipsky also said that he drove an automatic truck and that it was more difficult to control the speed on the downhills because he could not downshift. (*Id.*). Mr. Lipsky said that he had been on duty since the previous morning, but had only been driving for 9 hours, that he was still within his 14 hours of driving and wanted to keep going. (Doc. 1-1, Arrest Report). While talking, Officer Cronin observed Mr. Lipsky rubbing his face and eyes. (Doc. 1-1, Arrest Report). Officer Cronin's observations led him to believe that Mr. Lipsky was either too tired to drive or under the influence of some substance. (Docs. 1-1, Arrest Report).

Mr. Lipsky denied that he was driving while intoxicated or on drugs. (Docs. 1 at 5; 1-1, Arrest Report). Officer Cronin had Mr. Lipsky perform some field sobriety tests to see if he was okay to drive. (Doc. 1-1, Arrest Report). With the Horizontal Gaze Nystagmus Test (HGN), Officer Cronin observed lack of smooth pursuit and unequal tracking. (*Id.*). With the Alphabet A-Z test, Officer Cronin advised Mr. Lipsky that he was not to sing it, not to stop once started, and not to say the word "and" between Y and the letter Z. (*Id.*). During the exercise, Mr. Lipsky started singing halfway through but said all of the letters in order. (*Id.*). When Officer Cronin asked Mr. Lipsky to count backwards from 67-47, he was told not to stop once he had started. (*Id.*). Mr. Lipsky stated the sequence as follows: 67-66-65-64-63-62-61-60-59-58-57-56-**54**-53-52-51-50-49-48-47. (*Id.*). During the Finger to Nose Test, Officer Cronin asked Mr. Lipsky to tip his head back multiple times, but each time Mr. Lipsky would pull his head back down. (*Id.*). On

2

each finger Mr. Lipsky was unable to touch the tip of his nose like instructed and would touch near the bridge of his nose. (*Id.*). During the Modified Romberg Balance Test, Mr. Lipsky was asked to close his eyes, tilt his head back and count to 30. (*Id.*). Mr. Lipsky closed his eyes, but would not tilt his head back without pulling it back forward. (*Id.*). Mr. Lipsky counted to 30 in his head and pulled his head back down in only 8 actual seconds. (*Id.*). Officer Cronin observed that Mr. Lipsky had slight eye lid tremors and was swaying a lot. (*Id.*). During the walk and turn test, Mr. Lipsky missed heal to toe once during the first nine steps, was swaying side to side, and did not walk in a straight line but more at an angle, counted to the number 9, but only walked 8 steps. (*Id.*). Mr. Lipsky turned correctly, but during his second set of 9 steps, he walked at an angle, was swaying when he walked, missed heal to toe 2 times and was very rigid during the walk. (*Id.*). During the One Leg Stand test which involves Mr. Lipsky standing on one leg for 30 seconds, Mr. Lipsky was swaying side to side but did not lift his arms. (*Id.*). Mr. Lipsky took 40 real time seconds to get to the number 26 and Officer Cronin had Mr. Lipsky discontinue the test at the time. (*Id.*). Based on Officer Cronin's observations of Mr. Lipsky during the tests, he believed that Mr. Lipsky was impaired. (Doc. 1-1, Arrest Report).

Officer Cronin called his supervisor, Hot Springs Police Captain Bill Wainman to notify him of the situation and was advised to call a South Dakota Highway Patrol trooper for more guidance. (Doc. 1-1, Arrest Report). Officer Cronin called the highway patrol and was transferred to a Sioux Falls Trooper who advised him to call a Drug Recognition Expert (DRE). (Doc. 1-1 at 6).

Officer Cronin read Mr. Lipsky his Miranda Warning and obtained Mr. Lipsky's consent to undergo a Drug Recognition Exam. (Doc. 1-1, Arrest Report). Mr. Lipsky then withdrew his consent. (Doc. 1-1, Arrest Report). According to the arrest report, Officer Cronin had Mr. Lipsky exit his truck, handcuffed him, searched his pockets, and placed Mr. Lipsky in the rear seat of his patrol car. (Doc. 1-1, Arrest Report). Officer Cronin searched Mr. Lipsky's wallet and observed a large amount of cash inside of it. (Doc. 1-1, Arrest Report). Approximately 30 minutes later, Captain Wainman arrived on the scene and instructed Officer Cronin to return the wallet to Mr. Lipsky. (Doc. 1 at 5; 1-1). Mr. Lipsky alleges that when his wallet was returned, two one-hundred dollar bills were missing. (Doc. 1 at 5).

Officer Cronin did a search and inventory of the cab of the truck. (Doc. 1-1, Arrest Report). During his search, Officer Cronin observed a small quantity of a white crystal substance. (Doc. 1-1 at 7). The field test kit utilized by Officer Cronin on the white crystal substance tested negative for methamphetamine, but turned an odd reddish color. (Doc. 1-1, Arrest Report). Officer Cronin used his fingers to place the substance in an evidence bag and picked up the trace amounts with a lint roller. (Doc. 1-1, Arrest Report). The unidentified substance was sent to the State Health Lab for further testing. (Doc. 1-1, Arrest Report). Officer Cronin found 2 green bottles in the cab, one labeled melatonin and the other labeled Vitamin C and later placed those bottles into evidence. (Doc. 1-1, Arrest Report).

Mr. Lipsky was transported to the Hot Springs Police Department where he was given a breathalyzer which registered 0.00. (Doc. 1 at 5). Mr. Lipsky's urine and blood samples were sealed and mailed to the State Health Lab for further testing. (Docs. 1 at 5; 1-1).

Officer Cronin called Fall River Clerk Magistrate, Carol Foster, and notified her that Mr. Lipsky was being charged with DUI in violation of SDCL § 32-23-1, speeding in violation of SDCL § 32-25-7, and reckless driving in violation of SDCL § 32-24-1. (Doc. 1-1, Arrest Report). Ms. Foster set the bond at $10,000 and Officer Cronin notified Mr. Lipsky and the jailer of the bond and the charges. (*Id.*).

Mr. Lipsky underwent a DRE evaluation test at around 5:15 a.m., approximately 2 hours after he was contacted by Officer Cronin. (Doc. 1-1, DRE Report). Officer Cronin videotaped and observed the DRE exam and spoke to the evaluator after the exam concluded at 6:00 a.m. (*Id.*). In his report, the DRE evaluator opined that Mr. Lipsky "was not currently under the influence of a drug which would cause him to be grossly impaired and unsafe to operate a motor vehicle at the time the evaluation was conducted approximately 2 hours after Officer' Cronin's first contact with Lipsky." (*Id.*).

It is alleged that Mr. Lipsky remained in jail for at least 8 hours. (Docs. 1; 1-1, Lipsky Court Trial Transcript at 13:6-11, 24:19-22). Officer Cronin's arrest report listed Mr. Lipsky's offenses at DUI in violation of SDCL § 32-23-1, speeding in violation of § 32-25-7, and reckless driving in violation of SDCL § 32-24-1. (Doc. 1-1, Lipsky Court Trial Transcript 24:9-11; Arrest Report at 4). Based on the affidavit and arrest report of Officer Cronin, on December 26, 2019, the Fall River County State's Attorney filed a complaint on December 26, 2019 charging Mr.

Lipsky with reckless driving in violation of SDCL § 32-24-1, a class 1 misdemeanor; careless driving in violation of SDCL § 32-24-8, a class 2 misdemeanor; and speeding in violation of SDCL § 32-25-7, a class 2 misdemeanor. (Doc. 1-1, Lipsky Discovery Packet, Complaint).

The reckless and careless driving charges were dropped and on October 7, 2020, Mr. Lipsky went to trial on the speeding charge. (Doc. 1-1, Lipsky Court Trial Transcript). The circuit court judge granted Mr. Lipsky's motion for directed verdict on the speeding charge because Officer Cronin had testified that he was unable to identify a time where he had tested or calibrated his radar gun in the weeks prior to December 17, 2019—the day of Mr. Lipsky's arrest. (Doc. 1-1, Lipsky Trial Court Transcript).

## II. Procedural History

On April 26, 2022, Mr. Lipsky filed a complaint in the United States District Court, District of South Dakota, Western Division against City of Hots Springs police officers Nate Cronin, Bill Wainman, and Michael Close, and against the City of Hot Springs, South Dakota. (Doc. 1). Therein, Mr. Lipsky alleges claims arising under 42 U.S.C. § 1983 for unlawful arrest and unlawful search and seizure and alleges claims for false imprisonment and malicious prosecution. (Doc. 1). Mr. Lipsky also alleges a claim for negligent hiring, training, and supervision as well as a claim for criminal conspiracy. (Doc. 1).

Defendants have moved to dismiss Mr. Lipsky's complaint in its entirety under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

## DISCUSSION

### I. Defendants' Motion to Dismiss and Standard of Review

In his complaint, Mr. Lipsky alleges that Nate Cronin, Bill Wainman, and Michael Close, employed by the City of Hot Springs as police officers and acting under color of law at the time, violated his constitutional rights and are liable under 42 U.S.C. § 1983. Mr. Lipsky does not allege in what capacity he is suing the individual defendants. Typically, if a plaintiff's complaint is silent about the capacity in which he is suing the defendant, a court interprets the complaint as including only official capacity claims. *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th Cir. 1995). Mr. Lipsky asserts in his opposition brief that he is suing the individual defendants in their

individual and official capacities. The Court will liberally construe Mr. Lipsky's *pro se* complaint to include both official and individual capacity claims against the individually-named Defendants. Mr. Lipsky's section 1983 claims allege violations of the Fourth Amendment based on unlawful arrest, unlawful search, and unlawful seizure. (Doc. 1 at 3). Mr. Lipsky also alleges claims for false imprisonment, malicious prosecution, negligent training and supervision, and criminal conspiracy. (Doc. 1 at 3).

Defendants have moved to dismiss Mr. Lipsky's individual and official capacity claims on the basis that he has failed to allege a plausible claim for a violation of a constitutional right. It is essential that Mr. Lipsky alleges a violation of a constitutional right in order to proceed on either his official capacity or individual capacity claims. For example, in order to make out an official capacity § 1983 claim against a municipality, "a plaintiff must show that a municipal policy or custom, either official or unofficial, was the moving force behind a constitutional violation." *Marti v. City of Maplewood, Mo.*, 57 F.3d 680, 684 (8th Cir. 1995) (citing *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). In an individual capacity claim, qualified immunity "shields a government official from liability unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Burns v. Eaton*, 752 F.3d 1136, 1139 (8th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Thus, in resolving cases in which the defense of qualified immunity is raised, a court must "determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998).

In determining under Rule 12(b)(6) of the Federal Rules of Civil Procedure whether Mr. Lipsky has stated a plausible claim for a constitutional violation, the factual allegations in the complaint are accepted as true and viewed most favorably to the plaintiffs. *See Hager v. Ark. Dept' of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible on its face "when the plaintiff pleads factual contact that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236

(1974)). Still, "conclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard. *Iqbal*, 556 U.S. at 678.

In considering a 12(b)(6) motion to dismiss, courts primarily look to the complaint and "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting the motion into one for summary judgment." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)). To warrant dismissal of Mr. Lipsky's individual capacity claims at this early stage of the litigation, Defendants "must show that they are entitled to qualified immunity on the face of the complaint." *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005). The exhibits that Mr. Lipsky attached to his complaint are part of the complaint for this purpose. *Id.* (citing Fed. R. Civ. P. 10(c); *Meeham v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002)); *see also Kiesling v. Holladay*, 859 F.3d 529, 533 (8th Cir. 2017) (concluding that the exhibits attached to the complaint, including a copy of the search warrant and affidavit are part of the complaint in analyzing a motion to dismiss on the basis of qualified immunity).

The Eighth Circuit requires district courts to construe *pro se* complaints liberally. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). This means "that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Id.* at 915. Importantly, however, this rule of liberal construction does not excuse a *pro se* plaintiff from alleging enough facts to support his claims. *Id.* at 914. Even though a plaintiff is proceeding *pro se*, the district court will not construct a legal theory for plaintiff that assumes facts that have not been pleaded. *Id.* at 915 (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

Defendants have moved to dismiss the official and individual capacity unlawful arrest, unlawful seizure, and false imprisonment claims, arguing that based on the allegations in the complaint and attachments thereto, the officers did not engage in an unconstitutional act. Defendants contend that Officer Cronin had probable cause to arrest Mr. Lipsky because he committed one or more criminal offenses in Officer Cronin's presence. (Doc. 7 at 40) ("The

warrantless arrest of Plaintiff is supported by probable cause that Plaintiff was driving under the influence, reckless driving, and violation the maximum speed limit of 35 mph). Defendants argue that Officer Cronin's search of Mr. Lipsky's truck was also lawful because Officer Cronin had probable cause to believe that Mr. Lipsky's truck contained contraband or evidence of criminal activity. (Doc. 7 at 38, 40). Defendants have moved to dismiss Mr. Lipsky's negligent hiring, training, and supervision claims on the basis that they are barred by the statute of limitations and have moved to dismiss Mr. Lipsky's criminal conspiracy claim on the basis that Mr. Lipsky has failed to allege the deprivation of a constitutional right or privilege. (Doc. 7 at 42-43).

## II. Fourth Amendment claims arising under 42 U.S.C. §1983
### A. Unlawful Arrest

"It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013). "Probable cause to arrest exists when, at the time the arrest was made . . . the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1264 (8th Cir. 1996). Alternatively, "where the officers act on a mistaken belief that probable cause exists, if that mistake is 'objectively reasonable,' *arguable* probable cause exists." *Brown v. City of St. Louis, Mo.*, 40 F.4th 895, 900-01 (8th Cir. 2022) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Whether a law enforcement officer had probable cause or arguable probable cause at the time of the arrest is a question of law. *Walker v. Peterson*, Civ. No. 12-4078-KES, 2013 WL 6173779, at *2 (citing *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013)); *see also Nader v. City of Papillion*, 917 F.3d 1055, 1058 (8th Cir. 2019).

Although Eighth Circuit opinions do not always expressly state as much, the terms "probable cause" and "arguable probable cause" are not interchangeable, and each term serves a different purpose within the qualified immunity analysis. *Brown*, 40 F.4th at 901. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Brown*, 40 F.4th at 900. Accordingly, consideration of actual probable cause is assigned to the constitutional violation

prong of the qualified immunity analysis. *See id.* at 901. By contrast, considerations of arguable probable cause are "properly part of the resolution of qualified immunity's second prong, the clearly established prong." *Id.* (citing *Ross v. City of Jackson*, 897 F.3d 916, 921 (8th Cir. 2018); *Schaffer v. Beringer*, 842 F.3d 585, 592 (8th Cir. 2016)). Thus, "[e]ven if an officer arrests an individual without *actual* probable cause—in violation of the Constitution—he has not violated that individual's 'clearly established' rights for qualified immunity purposes if he nevertheless had *arguable* probable cause to make the arrest." *Id.* (citing *Toole v. City of Atlanta*, 798 F. Appx 381, 385 (11th Cir. 2019)).

In their Motion to Dismiss, Defendants argue that based on the allegations in the complaint, there was no constitutional violation because probable cause existed to arrest Lipsky without a warrant for driving under the influence, reckless driving, and violating the maximum speed limit of 35 mph. (Docs. 7 at 39, 40; 12 at 62). In arguing that probable cause exists on the face of the complaint, Defendants point to the allegations that Mr. Lipsky was traveling 30-35 mph over the speed limit, failed portions of the field sobriety tests, could not remember whether he stopped at a brake check just a few miles back, and was rubbing his eyes and face. (Doc. 12 at 62).

The Supreme Court of the United States has held that arrests for "even a very minor criminal offense" committed in an officer's presence do not violate the Fourth Amendment of the Constitution. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (finding that officer had probable cause to believe driver had committed crime in his presence because the driver admitted that neither she nor her children were wearing seatbelts as required by law[1], and holding that the officer was therefore authorized to make a custodial arrest); *Rose v. City of Mulberry, Ark.*, 533 F.3d 678, 679 (8th Cir. 2008) (citing *Atwater*, 532 U.S. at 354) (concluding that the officer had probable cause to detain and arrest the driver because the officer witnessed the driver commit a traffic violation); *United States v. Castleman*, 795 F.3d 904, 912-13 (8th Cir. 2015) (holding that even though the officer lacked authority under state law to make an arrest outside of his jurisdiction because the driver had not committed a felony or misdemeanor in the officer's presence, the arrest was constitutional because the officer had probable cause to make a traffic stop and arrest for the

---

[1] Texas law at the time of the arrest made it a misdemeanor, punishable only by fine, either for a front-seat passenger in a car equipped with safety belts not to wear one or for the driver to fail to secure any small child riding in front. *Atwater*, 532 U.S. at 318.

driver's minor traffic violation). Whether a warrantless arrest was authorized under South Dakota law, specifically SDCL § 23A-3-2[2], as argued by Defendants, is therefore not applicable to the Court's analysis since state law does not define the contours of Fourth Amendment protections. *See Virginia v. Moore*, 553 U.S. 167, 174-76 (2008); *Rose v. City of Mulberry, Ark.*, 533 F.3d 678, 680 (8th Cir. 2008) (citing *Virginia v. Moore*, 553 U.S. 164, 166-67 (2008)). For example, in *Virginia v. Moore*, the defendant was arrested for the misdemeanor of driving with a suspended license despite the fact that in the circumstances of his case, Virginia law authorized only the issuance of a summons. The Court held that although a state may provide more protection from warrantless arrests than the federal Constitution, that enhanced protection does not govern the scope of the protections afforded by the Fourth Amendment. 553 U.S. 164, 174-76 (2008) ("We conclude that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment protections."). If state law could define the contours of the Fourth Amendment, its protections would "vary from place to place and from time to time." *Id.* at 176. The Court concluded that an arrest is constitutionally reasonable under the Fourth Amendment when an officer has probable cause to believe a person committed a crime in his or her presence. *Id.* at 171-176.

Defendants argue that Officer Cronin had probable cause to arrest Mr. Lipsky for driving under the influence in violation of SDCL § 32-23-1, speeding in violation of SDCL § 32-25-7, and reckless driving in violation of SDCL § 32-24-1). In determining whether Lipsky was lawfully arrested, the Court will focus on the alleged speeding violation. SDCL § 32-25-7 provides:

> **32-25-7. Establishment of speed zones—Posting of zones—State or federal roads—Violation as misdemeanor.**
>
> The Transportation Commission may establish, by rules promulgated pursuant to chapter 1-26, a maximum speed limit of less than that established by 32-25-1.1 and 32-25-4 upon any highway or portion of highway under the jurisdiction of the Department of Transportation, and any portion of highway under

---

[2] SDCL 23A-3-2 provides:
   A law enforcement officer may, without a warrant, arrest a person:
   (1) For a public offense, other than a petty offense, committed or attempted in his presence; or
   (2) Upon probable cause that a felony or Class 1 misdemeanor has been committed and the person arrested committed it, although not in the officer's presence.

the jurisdiction of a state or federal agency if requested by the agency. The speed limit established by the commission is the maximum speed that any person may drive or operate any vehicle or class of vehicle upon that portion of highway. The Department of Transportation shall conspicuously post signs at the beginning and end of a portion of highway to show the maximum speed limit established by the commission on that portion of highway. A violation of any maximum speed limit established by the commission pursuant to this section is a Class 2 misdemeanor.

The arrest report attached to Mr. Lipsky's complaint indicates that the highway on which he was driving had posted signs indicating a maximum speed limit of 55 mph for cars and 35 mph for trucks. Mr. Lipsky concedes that the speed limit sign was present on the night of his arrest. He stated in his opposition brief that he had contacted the traffic engineer's office for Fall River County and was told that the speed limit sign had been there since the early 1990's. (Doc. 11 at 56). Under SDCL § 32-25-7, any violation of the maximum speed limit is a Class 2 misdemeanor.

Based on the allegations in the complaint, Officer Cronin had probable cause to arrest Mr. Lipsky for speeding. While Officer Cronin admitted that he had not calibrated his radar in the weeks prior to Mr. Lipsky's arrest, Officer Cronin observed the truck going at a high rate of speed, reported that it rocked his parked patrol car as it went by, that he did not observe brake lights at all during the truck's descent, and that he clocked it on his radar going 65 in a 35 mile per hour zone. Based on the totality of the circumstances alleged in the complaint, the Court concludes that the factual circumstances therein give rise to probable cause for Mr. Lipsky's arrest for speeding. On the face of the complaint, Mr. Lipsky's warrantless arrest was lawful and Defendant's motion to dismiss Mr. Lipsky's Fourth Amendment unlawful arrest claim is granted.

### B. Search of Person and Items on Person

In his Complaint, Mr. Lipsky alleges that after Officer Cronin told him he was being arrested for Driving Under the Influence, Officer Cronin removed Mr. Lipsky's wallet and cell phone from his pocket. Approximately half an hour later, Captain Wainwright arrived on the scene and told Officer Cronin to return Mr. Lipsky's wallet to him. Mr. Lipsky alleges that two one-hundred dollar bills were missing from his wallet after its return.

If an officer has lawfully arrested an individual, the officer may search the individual's person incident to that arrest and may reach into his pockets. *United States v. Pratt*, 355 F.3d 1119, 1121 (8th Cir. 2004) (citing *United States v. Robinson*, 414 U.S. 218, 226, 236 (1973) ("A

custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; *that intrusion being lawful*, a search incident to the arrest requires no additional justification.")). A search of a wallet incident to a lawful arrest is also permissible. *United States v. Arana-Arellano*, Civ. No. 05-40123, 2006 WL 462585, *report & recommendation*, at *5 (D.S.D. Feb. 14, 2006) (citing *United States v. McEachern*, 675 F.2d 618, 622 (4th Cir. 1982)); *see also United States v. Garcia-Garza*, Civ. No. 14-CR-113, 2014 WL 3748644, at *4 (D. Minn. Jul. 30, 2014) (citing *Riley v. California*, 573 U.S. 373, 384 (2014) (stating that a warrantless search of an arrestee's person, including personal property contained in his pockets, are valid as a search incident to arrest)).

The Court has already concluded that based on the allegations on the complaint, probable cause existed to arrest Mr. Lipsky. Accordingly, Officer Cronin's search of Mr. Lipsky's person and his personal effects associated with his person do not violate the Fourth Amendment.

### C. Search of Automobile and Seizure of Contents

After Mr. Lipsky was placed under arrest and after Captain Wainwright arrived on the scene, Officer Cronin conducted a search of the cab of Mr. Lipsky's truck. During the search, Officer Cronin observed a small quantity of a spilled out white crystal substance. During a field test, the substance tested negative for methamphetamine, but was sent to the State Health Lab for further testing. During his search, Officer Cronin found 2 green bottles labeled melatonin and vitamin C. Those were kept and later placed into evidence. Mr. Lipsky alleges that the search of his truck and seizure of vitamins and heartburn pills from his truck violated his Fourth Amendment rights.

Defendants argue that based on the allegations in the complaint, Mr. Lipsky has failed to state a plausible claim that the search of his truck and seizure of the white crystal substance and the two green bottles labeled melatonin and vitamin C violated his Fourth Amendment rights. Defendants argue that the allegations in the complaint establish that the search and seizure of those items without a warrant fell within the scope of the "automobile exception" to the warrant requirement and the search-incident-to-a-lawful arrest exception. (Docs. 7 at 40, 12 at 62). In his complaint, Mr. Lipsky alleges that he has a greater privacy interest in his truck because it functions as his home for many days and nights while he is not the road. (Doc. 1 at 6).

Contrary to the position advocated by Mr. Lipsky, the Supreme Court has made clear that the expectation of privacy in a traditional home is not extended to vehicles, such as a mobile home or camper that occupy a middle ground between dwelling and vehicle. *California v. Carney*, 471 U.S. 386, 392-93 (1985). Whatever heightened degree of privacy a driver could subjectively expect in such a vehicle is subverted by the fact that the vehicle is capable of travelling on public highways and is subject to regulation—and ostensibly greater scrutiny—by the state. *See id.* Accordingly, Mr. Lipsky does not have any greater expectation of privacy in the cab of his truck than he would have in a personal automobile.

### 1. Automobile Exception

The automobile exception permits warrantless searches of an automobile and seizures of contraband where there is "probable cause to believe that an automobile contains contraband" or other evidence of criminal activity. *United States v. Evans*, 830 F.3d 761, 767 (8th Cir. 2016); *United States v. Martinez*, 78 F.3d 399, 401 (8th Cir. 1996). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017) (citation omitted).

Defendants do not expound upon their argument that Officer Cronin had probable cause to believe that Mr. Lipsky's truck contained contraband or evidence of criminal activity. Presumably, it is because they argue that Officer Cronin had probable cause to believe that Mr. Lipsky was under the influence of an uncontrolled substance in violation of SDCL § 32-23-1, and that evidence of such a crime may be contained therein. In support of their argument that Defendants had probable cause to arrest Lipsky for driving under the influence, Defendants cite allegations that "[Lipsky] was traveling 30-35 mph over the speed limit, failed portions of the field sobriety tests, could not remember whether he stopped at a brake check just a few miles back, and was rubbing his eyes and face." (Doc. 7 at 40).

Defendants have not cited any caselaw suggesting that under the facts alleged, Officer Cronin had probable cause or arguable probable cause to suspect that Mr. Lipsky's truck contained evidence of driving under the influence. This is not a case where any open containers or illicit substances were observed by Officer Cronin, nor did Officer Cronin report smelling any alcohol or odors of other illicit substances. *See United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000)

(smell of marijuana provides officers with probable cause to search vehicle); *United States v. Moore*, Civ. No. 8:21-307, 2022 WL 17573721, at *5 (D. Neb. Oct. 24, 2022) (concluding that officer had probable cause to search the vehicle when the officer observed open container of alcohol in the vehicle). Mr. Lipsky denied ingesting any drugs or alcohol. Officer Cronin reported that Mr. Lipsky was speeding down a large hill at 10 miles per hour over the speed limit for cars and 30-35 miles per hour over the speed limit for trucks. After stopping Lipsky for speeding, Officer Cronin though Mr. Lipsky to be slurring his words and his eyes droopy, observed Mr. Lipsky was continually rubbing his face and eyes, and reported that Mr. Lipsky had relayed that he had been up since the previous morning and was tired. It appears from the allegations in the complaint that Mr. Lipsky had difficulties with some of the field sobriety tests, but the Court has no information at this time whether these results were indicative of being under the influence. Assuming the facts alleged in the complaint as true and drawing all reasonable inferences in favor of Mr. Lipsky, the Court does not find at this juncture that Officer Cronin had probable cause or arguable probable cause to suspect that the truck contained evidence of Mr. Lipsky driving under the influence.

### 2. Search incident to arrest

In addition to the automobile exception, Officer Cronin argues that his warrantless search of the cab of the truck was lawful as a search incident to a lawful arrest. (Doc. 12 at 62). Aside from the automobile exception, an arresting officer may search the passenger compartment of a vehicle after an arrest only "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Johnson v. Phillips*, 664 F.3d 232, 238 (8th Cir. 2011) (citing *Arizona v. Gant*, 556 U.S. 332 (2009)). In the complaint and attachments thereto, as the Court best understands them, Mr. Lipsky was handcuffed and placed in the rear seat of the patrol car before Officer Cronin proceeded to search the cab of his truck. Similar to the arrestee in *Arizona v. Gant*, 556 U.S. 332 (2009), Lipsky was not within reaching distance of the cab of the truck and a search of the cab would not be reasonable under the search-incident-to-arrest exception. Thus far, Defendants have not demonstrated that that another exception to the warrant requirement applies to the search. Defendant's motion to dismiss the unlawful search of Mr. Lipsky's truck and seizure of his personal affects is denied.

III. **False imprisonment, malicious prosecution, and negligent hiring, training, and supervision**

In his complaint, Mr. Lipsky alleges a claim for false imprisonment, malicious prosecution, negligent hiring, training, and supervision, and well as a claim for criminal conspiracy. Defendants have moved to dismiss Mr. Lipsky's state law claims. The Court will address each claim in turn.

A. **False Imprisonment**

"False arrest is one of several means of committing the tort of false imprisonment." *Heib v. Lehrkamp*, 704 N.W.2d 875, 883 (S.D. 2005). "False arrest 'describes the setting for false imprisonment when it is committed by [a law enforcement] officer . . . .'" *Id.* The essential elements of false imprisonment are: (1) the detention or restraint of one against his will, and (2) the unlawfulness of such detention or restraint." *McGillivray v. Siedschlaw*, 278 N.W.2d 796, 801 (S.D. 1979) (Henderson, J., concurring); *Catencamp v. Albright*, 251 N.W.2d 190, 191 (S.D. 1977).

Defendants move to dismiss Mr. Lipsky's false imprisonment claim, arguing that the warrantless arrest of Mr. Lipsky was lawful. As with the false arrest claim, this Court finds that based on the facts alleged in the complaint and the attachments thereto, Officer Cronin had probable cause to arrest Mr. Lipsky without a warrant for speeding in his presence. However, Mr. Lipsky also takes issue with the $10,000 bail set for him and his approximately 8-hour imprisonment. At this juncture, the Court is unable to determine based on the allegations in the complaint whether Mr. Lipsky's detention was unreasonably long in violation of his Fourth Amendment rights. Accordingly, Defendants' motion to dismiss the false imprisonment claim is granted with regard to the initial detention, but denied with regard to any claim for prolonged detention.

B. **Malicious Prosecution**

The elements of a malicious prosecution claim are:

(1) commencement of an original criminal proceeding;
(2) its legal causation by present defendant against present plaintiff, who was the defendant in the original criminal proceeding;

15

(3) its termination in favor of the present plaintiff;

(4) absence of probable cause for the original criminal proceeding;

(5) malice; and

(6) damage to plaintiff.

*Chien v. City of Sioux Falls*, 393 F.Supp.2d 916, 919-20 (D.S.D. 2005) (citation omitted). In the present case, Mr. Lipsky was charged with driving under the influence, reckless driving, and speeding. The DUI and reckless driving charges were dropped and Mr. Lipsky went to trial on the speeding charge. Although the trial court ultimately dismissed the speeding charge because Officer Cronin admitted that he did not calibrate his radar gun in the weeks prior to Mr. Lipsky's arrest, as discussed above, based on the totality of circumstances alleged in the complaint, the Court finds that probable cause existed for the speeding charge. Mr. Lipsky has failed to allege the absence of probable cause for the court trial on the speeding violation and his malicious prosecution claim is therefore dismissed.

### C. Negligent Hiring, Training and Supervision

Mr. Lipsky has asserted claims for negligent hiring, training and supervision. Defendants assert that any such torts claims are barred by the statute of limitations provided under SDCL § 9-24-4. SDCL § 9-24-5 provides: "Any action for recovery of damages for personal injury or death caused by the negligence of a municipality must be commenced within two years from the occurrence of the accident causing the injury or death." Under SDCL § 9-24-25, therefore, the cause of action accrues at the time the injuries occurs. *See Loesch v. City of Huron*, 723 N.W.2d 694, 696 (S.D. 2006).

The events which are the basis of Mr. Lipsky's complaint occurred on December 17, 2019. (Doc. 1). Mr. Lipsky filed his complaint in this matter on April 26, 2022 and the summons was issued to Defendants on May 2, 2022. (Docs. 1, 3). Defendants argue that Mr. Lipsky's negligence claims fail because the complaint was neither filed nor served upon Defendants within the two-year time period required by SDCL § 9-24-5. (Doc. 7 at 42).

"A court may dismiss a claim under Rule 12(b)(6) as barred by the statute of limitations if the complaint itself establishes that the claim is time-barred." *Humphrey v. Eureka Gardens Public Facility Bd.*, 891 F.3d 1079, 1081 (8th Cir. 2018) (citation omitted). "The court may

consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Id.* (citation omitted).

The Eighth Circuit Court of Appeals has held that a plaintiff may bring a § 1983 claim based on a municipality's alleged deficient hiring or failure to train and supervise its employees. *See B.A.B., Jr. v. Bd. of Educ. of City of St. Louis*, 698 F.3d 1037, 1040 (8th Cir. 2012) (citing *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010)). For example, to succeed on a § 1983 claim based on a failure to train, a plaintiff must prove that: (1) the City's training practices were inadequate; (2) the City was deliberately indifferent to the rights of others in adopting them, such that the failure train reflects a deliberate or conscious choice by the City; and (3) an alleged deficiency in the training procedures actually caused the plaintiff's injury. *Id.* To prevail on a claim for failure to supervise under § 1983, a plaintiff must establish that the City Defendants (1) received notice of a pattern of unconstitutional acts committed by subordinates; (2) demonstrated deliberate indifference or gave tacit authorization of the acts; (3) failed to take sufficient remedial action; and (3) that such failure proximately caused injury to the plaintiff. *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997).

Section 1983 does not contain a specific statute of limitations so federal courts "apply the most analogous state statutes of limitations." *Bell v. Fowler*, 99 F.3d 262, 265-66 (8th Cir. 1996). "In South Dakota, a specific statute provides that civil rights actions must be brought within three years after the alleged constitutional deprivation occurred or the action will be barred." *Bell*, 99 F.3d at 266 (citing SDCL § 15-2-15.2). Thus, it appears to the Court at this juncture that limitations period prescribed under SDCL § 15-2-15.2 may govern section 1983 actions based on negligent hiring, training, and supervision.

Even if SDCL § 9-24-5 may apply to bar a § 1983 action against a municipality for negligent hiring, training, or supervision, it is clear that such statute would not bar any claims alleged against individual officers. The South Dakota Supreme Court has held that SDCL § 9-24-5 is applicable only to municipalities, not to individual defendants. *Salzar v. Barff*, 792 N.W.2d 177, 180 (S.D. 2010) (concluding that a police officer was not a "municipality," and thus, two-year statute of limitations governing claims for personal injury or death caused by negligence of municipality did not govern motorist's claim against police officer for injuries sustained when police cruiser collided with her vehicle while officer was responding to emergency). Mr. Lipsky

17

has made clear that he is also suing the law enforcement officer defendants in this case in their individual capacities. For these reasons, the Court concludes that Defendants have not proved as a matter of law the Mr. Lipsky's negligent hiring, training, and supervision claims under section 1983 are time-barred under SDCL § 9-24-5.

### D. Criminal Conspiracy

Mr. Lipsky alleges a "criminal conspiracy" between the individual defendants and the City Council of Hot Springs "to falsify DUI arrests to take advantage of [the Selective Traffic Enforcement Program.]" (Doc. 1 at 9). Mr. Lipsky alleges that the Selective Traffic Program ("STEPS") pays federal grants to police departments for making DUI arrests even if all charges are thrown out and that Defendants conspired to falsify DUI arrests to take advantage of this program. (Doc. 1 at 10). Mr. Lipsky alleged that Officer Cronin received a $3.00 per hour raise for his participation in the STEPS program which includes forcing drivers to do a "Drug Recognition Evaluation." (Doc. 1 at 10).

Mr. Lipsky does not identify a statute providing a private right of action for "criminal conspiracy." Indeed, a private plaintiff like Mr. Lipsky does not have standing to enforce criminal laws. *See Nieves v. Bartless*, 139 S.Ct. 1715, 1733 (2018) (Gorsuch, J., concurring in part and dissenting in part) ("[T]he decision whether to institute criminal charges is one our Constitution vests in state and federal executive officials. . . ."); *see also United States v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion").

However, the Court must read this *pro se* complaint liberally and construe the complaint in a way that permits Mr. Lipsky's claim to be considered within the proper legal framework. In doing so, the Court finds that Mr. Lipsky has standing to bring a claim for civil conspiracy under 42 U.S.C. § 1983. That being said, the Court concludes that Mr. Lipsky has failed to state a § 1983 conspiracy claim.

To prove a § 1983 conspiracy claim, a plaintiff must show: "(1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." *Faulk v. City of St. Louis*, 30 F.4th 739, 747 (8th Cir. 2022). Mr. Lipsky

alleges that Defendants in this matter have conspired to make false arrests to take advantage of the STEPS program funds and that Officer Cronin unlawfully arrested Mr. Lipsky in furtherance of this conspiracy. The Court has already ruled as a matter of law that based on the allegations in the complaint and the attachments thereto, Mr. Lipsky's arrest was lawful. The Court therefore finds as a matter of law that Mr. Lipsky has failed to allege an overt act (unlawful arrest) in furtherance of the alleged conspiracy. Mr. Lipsky's section 1983 conspiracy claim is dismissed for failure to state a claim upon which relief may be granted.

Accordingly, it is hereby ORDERED that Defendants' Motion to Dismiss is GRANTED IN PART AND DENIED IN PART as follows:

1) GRANTED as to Mr. Lipsky's § 1983 claim based on unlawful arrest;
2) GRANTED as to Mr. Lipsky's § 1983 claim based on unlawful search of his person and wallet;
3) DENIED as to Mr. Lipsky's § 1983 claim based on unlawful search of Mr. Lipsky's truck and seizure of his personal effects;
4) GRANTED as to Mr. Lipsky's false imprisonment claim based on his initial detention and DENIED as to Mr. Lipsky's claim for prolonged detention;
5) GRANTED as to Mr. Lipsky's malicious prosecution claim;
6) DENIED as to Mr. Lipsky's negligent hiring, training, and supervision claims; and
7) GRANTED as to Mr. Lipsky's civil conspiracy claim.

Dated this 6th day of March, 2023.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK