UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| DANIEL LIPSKY,<br><br>Plaintiff,<br><br>vs.<br><br>NATE CRONIN, BILL WAINMAN, MICHAEL CLOSE, and CITY OF HOT SPRINGS, SOUTH DAKOTA,<br><br>Defendants. | 5:22-CV-05039<br><br>MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Pending before the Court is Defendants' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. 51). Defendants' motion was filed on June 3, 2024, and as of the date of this order, Plaintiff's only response is a Notice stating that he has not received certain items of discovery. (Doc. 86). The items listed, however, are items which have already been ruled on by this Court and by Magistrate Judge, Daneta Wollman. (Docs. 56; 57; 59; 70). The Court also notes that Defendants filed a statement of undisputed material facts (Doc. 55) which has not been controverted by Plaintiff. This Court has notified Plaintiff three times of his opportunity to respond to the basis of Defendants' motion for summary judgment and has extended the deadline to respond several times. The Court has delayed judgment long enough and will now rule on the motion based on the supporting materials available to it. For the following reasons, Defendants' Motion for Summary Judgment is granted.

## I.    FACTUAL BACKGROUND

The present case arose from a traffic stop on December 17, 2019. (Doc. 55 PgID 260). While working the overnight shift, Defendant, Officer Nate Cronin, observed Plaintiff, Daniel Lipsky, driving a semi-truck which appeared to be traveling at a high rate of speed down the Highway 18 bypass on the outskirts of Hot Springs, South Dakota. (*Id.*). At the top of Highway 18, there is a brake check stop for trucks, and the speed limit for semi-trucks for that stretch of road is thirty-five (35) miles per hour. (*Id.*). Officer Cronin activated his radar which recorded Mr. Lipsky driving at a speed of sixty-five (65) miles per hour. (*Id.*). Officer Cronin then pulled behind Mr. Lipsky, activated his emergency lights, and Mr. Lipsky came to a complete stop at the bottom of the bypass. (Doc. 1-1). Officer Cronin approached Mr. Lipsky's vehicle and advised him he was stopped for speeding. (Doc. 55 PgID 260). While speaking with Mr. Lipsky, Officer Cronin observed that Plaintiff was slurring his words, his eyes were droopy, and that he was rubbing his face and eyes. (*Id.*). Officer Cronin then asked Mr. Lipsky to come back to his patrol vehicle. (Doc. 1 PgID 5). During the conversation, Mr. Lipsky continued rubbing his face and eyes, and when asked if he stopped at the brake check point at the top of the bypass, he stated that he could not remember. (Doc. 55 PgID 261). At this point, based on Officer Cronin's training and experience, he believed that Mr. Lipsky was either too tired to drive or that he was under the influence of an unknown substance. (*Id.*).

Mr. Lipsky denied that he was driving while intoxicated or on drugs, so Officer Cronin had Mr. Lipsky perform several field sobriety tests. (*Id.*). During the Horizontal Gaze Nystagmus Test Officer Cronin observed a lack of smooth pursuit and unequal tracking. (*Id.*) Mr. Lipsky began to sing halfway through the Alphabet A-Z test despite being instructed not to sing. (*Id.*). When asked to count backwards from sixty-seven (67) to forty-seven (47), Mr. Lipsky skipped the number fifty-five (55). (*Id.*). In the Finger to Nose Test, Mr. Lipsky was unable to touch the tip

2

of his nose. (*Id.*). During the Walk and Turn Test, Mr. Lipsky was swaying side to side, failed to walk in a straight line, missed three (3) heel-to-toe steps, and miscounted his steps. (*Id.*). In the One Leg Stand Test, it took Mr. Lipsky forty (40) real time seconds to count to twenty-six (26). (*Id.*). Lastly, throughout the entirety of the field sobriety tests, Officer Cronin observed Mr. Lipsky constantly swaying and slight eye lid tremors. (*Id.*). Based on Officer Cronin's training and experience, he believed that Mr. Lipsky was on some form of central nervous system depressant but was not sure which depressant it could have been. (*Id.*).

After consulting with his supervisor, Captain Bill Wainman and South Dakota Highway Patrol, Officer Cronin placed Mr. Lipsky under arrest. (*Id.* at PgID 261-62). Officer Cronin handcuffed My Lipsky, searched his person, and placed him in the back of his patrol car. (*Id.*). Officer Cronin found a large amount of cash in Mr. Lipsky's wallet. (*Id.*). At this point, Captain Bill Wainman had arrived, and he and Officer Cronin searched and inventoried the cab of Mr. Lipsky's semi-truck. (*Id.*). Officer Cronin observed a small quantity of a white crystalized substance which tested negative for methamphetamine but turned an odd reddish color. (*Id.*). Officer Cronin further discovered and seized two green pill bottles labeled Melatonin and Vitamin C and placed them into evidence. (*Id.*).

Captain Wainman remained on the scene while Officer Cronin transported Mr. Lipsky to the Hot Springs Police Department, where he provided a voluntary breathalyzer and urine sample. (*Id.*). Mr. Lipsky was then transported to the Fall River County Jail where he provided a voluntary blood sample. (*Id.*). At this time, approximately two (2) hours after his arrest, Mr. Lipsky underwent a Drug Recognition Evaluation. (Doc. 55 PgID 262). Upon the conclusion of the evaluation, the evaluator opined that Mr. Lipsky was "not currently under the influence of a drug which would cause him to be grossly impaired and unsafe to operate a motor vehicle at the time

of the evaluation." (Doc. 1-1, DRE Report). Nevertheless, based on Officer Cronin's observations, training, experience, and Mr. Lipsky's behavior at the time of the traffic stop, Officer Cronin believed that Mr. Lipsky was under the influence of a substance while operating his motor vehicle. (Doc. 55 PgID 262). Officer Cronin called Fall River Clerk Magistrate, Carol Foster and notified her of what happened, and that Mr. Lipsky was being charged with DUI in violation of SDCL § 32-23-1, speeding in violation of SDCL § 32-25-7, and reckless driving in violation of SDCL § 32-24-1. (*Id.*). Magistrate Clerk Carol Foster set the bail amount at $10,000. (Doc. 1-1, Arrest Report). After notifying the jailer of the bond and charges, Officer Cronin left Mr. Lipsky in the custody of the jail staff where he remained for at least eight hours. (Docs. 1 PgID 7; 75-1, Cronin Declaration).

On December 26, 2019, the Fall River State's Attorney filed a complaint charging Mr. Lipsky with reckless driving in violation of SDCL § 32-21-1, careless driving in violation of SDCL § 32-24-8, and speeding in violation of SDCL § 32-25-7. (Doc. 1-1, Arrest Report). The reckless and careless driving charges were dropped, and on October 7, 2020, Mr. Lipsky when to trial on the speeding charge. (*Id.*). The Circuit Court Judge granted Mr. Lipsky's motion for directed verdict on the speeding charge because Officer Cronin testified that he was unable to identify a time where he tested or calibrated his radar gun in the weeks prior to December 17, 2019. (*Id.*).

## II.    PROCEDURAL HISTORY

On April 26, 2022, Mr. Lipsky filed a complaint against Hot Springs police officers Nate Cronin, Bill Wainman, and Michael Close, in their individual and official capacities alleging unlawful arrest, unlawful search and seizure, prolonged detention, false arrest, and malicious prosecution under 42 U.S.C. § 1983. (Doc. 1). Mr. Lipsky is also alleged negligent hiring, training, and supervision as well as a claim for criminal conspiracy. (*Id.*). Following Defendants'

4

motion to dismiss, this Court dismissed all but three of Plaintiff's claims: (1) a § 1983 claim based on the alleged unlawful search of Mr. Lipsky's semi-truck cab and the seizure of his personal effects, (2) a § 1983 prolonged detention claim challenging the City of Hot Springs' policy or custom which mandates the eight (8) hour imprisonment of arrestee's charged with DUI, and (3) a § 1983 claim based on negligent hiring, training, and supervision. (Doc. 16).

On June 3, 2024, Defendants moved for summary judgment on Plaintiff's remaining claims. (Doc. 51). On August 27, 2024, this Court notified Plaintiff that he has not yet responded to Defendants' summary judgment motion and granted him forty-five (45) days from the date of the order to respond. (Doc. 59). In lieu of responding, Plaintiff filed two (2) motions for recusal, both of which were denied. (Docs. 71; 73). In this Court's order of October 24, 2024, denying Plaintiff's second motion for recusal, it once again notified Plaintiff that he has not yet responded to Defendants' summary judgment motion and granted him thirty (30) days to respond from the date of the ruling from Court of Appeals for the Eighth Circuit on his appeal. (Doc. 76). The Court of Appeals for the Eighth Circuit denied Plaintiff's appeal on November 26, 2024, and issued a mandate on December 20, 2024. (Doc. 83). On February 3, 2025, the Court notified Plaintiff for a third time that he has not responded. (Doc. 85). This Court granted Plaintiff until February 17, 2025, to submit a response, and clarified that once that date passed, the Court will prepare and enter a decision on Defendants' motion. (*Id.*). On February 17, 2025, in place of a response, Plaintiff filed a notice that he has not received certain items of discovery. (Doc. 86). The items he lists, however, are items which both this Court and Judge Wollman have already ruled on. (Docs. 56; 57; 59; 70). The time for discovery has passed, and as outlined above, the Court has granted Plaintiff more than enough time to formulate a response.

### III.    SUMMARY JUDGMENT STANDARD

It is well established that summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court examines "the record in the light most favorable to the nonmoving party…drawing all reasonable inferences in that party's favor." *Whitney v. Guys*, 826 F.3d 1074, 1075 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923-24 (8th Cir. 2004)). There is a genuine issue of material fact if a "reasonable jury [could] return a verdict for either party" on a particular issue. *Mayer v. Countrywide Home Loans*, 647 F.3d 789, 791 (8th Cir. 2011). Therefore, to satisfy its burden, the moving party must identify those portions of the record which demonstrate the absence of a genuine issue of material fact or must illustrate that the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When such a situation arises, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); *Gacek v. Owens & Minor Distrib., Inc.*, 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007); *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005).

A party that fails to respond to any basis of a motion for summary judgment effectively waives any argument in opposition to that aspect of a motion for summary judgment. *See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) (stating that a "[party's] failure to oppose a basis for summary judgment constitutes waiver of that argument."); *Department of Labor v. EJ's Cleaning Services, Inc.*, No. 4:19-84, 2020 WL 1432048, *1 (E.D. Ark. March 19, 2020) ("By not responding, Defendants have waived any argument in opposition to Plaintiff's summary judgment motion."). Moreover, Rule 56.1 of the South Dakota Local Rules of Civil Practice provides that "[a]ll material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's response." LR 56.1. Although a *pro se* plaintiff is entitled to the benefit of a liberal construction of his pleadings, *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004), the standards for summary judgment under Rule 56 of the Federal Rules of Civil Procedure remain applicable. *Quam v. Minnehaha Cty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Further, a litigant's *pro se* status does not permit noncompliance with court rules and directives. *See Bennett v. Dr Peper/Seven Up Inc.*, 295 F.3d 805, 808 (8th Cir. 2002); *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005).

Nevertheless, Mr. Lipsky's failure to respond to the basis of Defendants' summary judgment motion "does not automatically compel resolution of [the motion] in favor of [defendants]." *United States v. One Parcel of Real Prop.*, 27 F.3d 327, 329 n. 1 (8th Cir. 1994). Courts must still determine whether summary judgment is appropriate regardless of whether the adverse party responded. *Id.*; *see also Canada v. Union Elec. Co.*, 135 F.3d 1211, 1213 (8th Cir. 1997) ("When a motion would be dispositive of the merits of the case if granted, courts should normally not treat a failure to respond to the motion as conclusive."). Thus, in considering the merits of Defendants' motion for summary judgment, the Court will deem the facts in Defendants'

statement of material facts as admitted, and based on those facts will determine the legal consequences and permissible inferences from them.

## IV.    ANALYSIS

### A.  42 U.S.C. § 1983 Claims Generally

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right secured by the Constitution or laws of the United States and must show that the deprivation was committed by a "person" acting under color of state law. *Schmidt v. City of Bella Villa*, 551 F.3d 564, 571 (8th Cir. 2009); *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). In the instant case, it is clear that Defendants were acting under color of state law, and the Defendants do not dispute such, therefore the remainder of this opinion will focus on the alleged constitutional deprivations.

Municipalities and their employees are suable "persons" under § 1983, and employees may be sued in both their official and individual capacities. *Riis v. Shaver*, 458 F.Supp.3d. 1130, 1162 (D.S.D. 2020) (citing *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). In a prior order, this Court liberally construed Plaintiff's *pro se* complaint to include a claim against the City of Hot Springs directly as well as official and individual capacity claims against three City of Hot Springs police officers: Nate Cronin, Bill Wainman, and Michael Close. (Doc. 16). After consideration under the new Eighth Circuit rule, the "course of proceedings" demonstrates Plaintiff's intent to sue Defendants in their individual and official capacities and has put the above-named Defendants on notice "that '[their] personal liability [is] at stake.'" *S.A.A. v. Geisler*, No. 23-3119, 2025 WL 426999, *5 (8th Cir. February 7, 2025) (quoting *Daskalea v. D.C.*, 277 F.3d 433, 488 (D.C. Cir. 2000)). Relevant factors a court should consider include, but are not limited to, "how early in the litigation the plaintiff first specified individual capacity claims, whether the plaintiff's complaint included a prayer for punitive

damages, and whether the defendant declined to raise a qualified immunity defense." *Id.* Here, while Plaintiff's complaint did not include a prayer for punitive damages, it did include a prayer for damages against each officer individually, thereby providing Defendants notice. Further, Plaintiff first specified individual capacity claims in response to a motion to dismiss in which Defendants raised a qualified immunity defense. *See Id.* (citing *Larez v. City of Los Angeles*, 946 F.2d 630, 640 (9th Cir. 1991)) (specifying individual capacity claims for the first time in response to motion to dismiss was early enough to be given weight).

The Court will separately address the claims against the officers in their official capacity and the claims against the City of Hot Springs directly. It will then resolve the claims against the officers in their individual capacities.

## B. Official Capacity § 1983 Claims

When a municipal employee is sued in his or her official capacity, the claim is treated as a suit against the municipality for which the employee works, here the City of Hot Springs. *Hess v. Ables*, 714 F.3d 1048, 1054 (8th Cir. 2013); *see also Monell*, 436 U.S. at 690 n.55 (explaining that "official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). A municipality, however, cannot be held vicariously liable for the acts of its employees under § 1983. *Monell*, 436 U.S. at 691. In order to establish municipal liability under § 1983, a plaintiff must show that the alleged constitutional violation resulted from (1) an "official municipal policy"; (2) an unofficial "custom"; or (3) a deliberately indifferent failure to train or supervise. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013) (citing *Monell*, 436 U.S. at 691); *see also Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("[T]o establish the liability of an official acting in his official capacity, the plaintiff must prove that a policy or custom of the city caused the alleged violation."); *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) ("Plaintiffs who seek to

impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury."); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (reasoning that this demarcation "was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.").

Under *Monell*, "policy" and "custom" are not interchangeable. *Riis*, 458 F.Supp.3d at 1190 (citing *Corwin v. City of Independence*, 829 F.3d 695, 699–700 (8th Cir. 2016)). An unofficial municipal custom, requires a plaintiff to show:

> (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Corwin*, 829 F.3d at 700. An official municipal policy, on the other hand, is "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d. 1197, 1204 (8th Cir. 1999). Municipal policies include "actions by its legislative body", *Riis*, 458 F.Supp.3d at 1190, and decisions or actions by employees "'who possess[] final authority to establish municipal policy with respect to the action ordered.'" *Ware v. Jackson Cnty.*, 150 F.3d 873, 885 (8th Cir. 1998) (alteration in original) (quoting *Pembaur*, 475 U.S. at 481). Finally, there are "limited circumstances" where a municipality's deficient hiring, or its failure to train and supervise its employees could constitute a municipal policy for which it can be liable. *See Connick*, 563 U.S. at 61; *B.A.B., Jr. v. Bd. of Educ. of City of St. Louis*, 698 F.3d 1037, 1040 (8th Cir. 2012); *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010).

Further, municipal liability requires a "direct causal link between" the relevant policy or custom and the alleged constitutional deprivation. *Riis*, 458 F.Supp.3d at 1190 (citing *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In other words, to establish municipal liability under § 1983, the plaintiff must demonstrate that the policy or custom was the "moving force" behind the constitutional violation. *Monell*, 436 U.S. at 694.

Defendants argue that Plaintiff has failed to provide any evidence of a City of Hot Springs policy or custom which caused any of his alleged constitutional deprivations, and thus summary judgment on Mr. Lipsky's official capacity claims must be granted. The Court will discuss each claim in turn.

**1. Count I—Unlawful Search and Seizure**

As just stated, Defendants argue that Plaintiff has failed to provide evidence that the City of Hot Springs has a policy or custom which was the "moving force" behind the alleged unlawful search of Plaintiff's vehicle and seizure of his personal effects. Defendants point to a gap in the record and have illustrated Plaintiff's failure to identify the existence of a policy or custom supported by more than allegations and his own conclusions. To avoid summary judgment on his unlawful search and seizure claim, Plaintiff must provide specific facts or evidence which, when viewed in a light most favorable to Plaintiff, demonstrates that Hot Springs has a policy or custom which caused the proscribed constitutional deprivation. Simply put, Plaintiff has failed to do so.

Plaintiff sued Officer Cronin and Captain Wainman in their official capacities alleging that they lacked probable cause to search his vehicle and seize his personal effects. As far as the Court can tell based on the materials available to it, the only "evidence" of a policy or custom provided by Plaintiff are unsubstantiated assertions that the Hot Springs Police Department has a habit of seizing personal effects that are not contraband or evidence of criminal activity and making false DUI arrests in order to take advantage of the Selective Traffic Enforcement Program. To support

11

these assertions, Plaintiff points to the familial relationship between the Hot Springs Sheriff, Police Chief, and Mayor and claims that they purposely hire corrupt officers who will further their goals of running a for-profit police department. Plaintiff also claims that Officer Cronin has made anywhere from 60-300 false DUI arrests, yet he has not provided any evidence supporting the above assertions.

Allegations alone are insufficient to survive summary judgment, *Thomas* 483 F.3d at 527, and Plaintiff's failure to respond to the basis of Defendants' motion and demonstrate an issue of material fact is fatal to his official capacity unlawful search and seizure claim. *See Bennett*, 295 F.3d at 808 ("The obligation to point out genuine issues of material fact that would preclude judgment as a matter of law for [defendants] lay with [plaintiff]."); *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001) ("Like any other civil litigant, [plaintiff] was required to respond to [defendants'] motion[] with specific factual support for his claims to avoid summary judgment."). Moreover, the Court is "not bound, by rule or otherwise, to search the record for genuine issues of fact," when a litigant fails to identify such issues in a timely-filed response. *Bennett*, 295 F.3d at 809; *Barge v. Anheuser-Busch, Inc.* 87 F.3d 256, 260 (8th Cir. 1996) (noting that the district court has no "affirmative obligation to plumb the record in order to find a genuine issue of material fact."); *Rodgers v. City of Des Moines,* 435 F.3d 904, 908 (8th Cir. 2006) ("Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments.").

In Plaintiff's Notice, he claims that he has not yet received the evidence required to respond to the basis of Defendants' motion. However, the discovery items he identified were raised in pervious motions and were ruled upon by this Court and Judge Wolman in several previous orders. (Docs. 56; 57; 59; 70). Likewise, Plaintiff's comment that this Court has neglected to review an

unredacted version of Officer Cronin's personnel file is moot as he never appealed Judge Wollman's order. See (Doc. 57); Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). The present motion has been pending since June 3, 2024, and the Court will not further delay its ruling to rehash previously resolved discovery disputes. As stated above, the Court has notified Mr. Lipsky three times of his opportunity to respond to the basis of the motion for summary judgment and extended the deadline to respond several times.

"We look to the substantive law to determine whether an element is essential to a case," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Under *Monell*, proving the existence of a municipal policy or custom that was the "moving force" behind a constitutional violation is an essential element of Plaintiff's official capacity unlawful search and seizure claim. 436 U.S. at 694. Ultimately, Plaintiff bears the burden to prove the elements at trial, so his failure to provide any admissible evidence of a Hot Springs policy or custom which caused his alleged constitutional injury "renders all other facts immaterial." Accordingly, Defendants' motion for summary judgment on Plaintiff's § 1983 unlawful search and seizure claim against Officer Cronin and Captain Wainman in their official capacities is granted. Further, as the Court discusses below, Officer Cronin and Captain Wainman had arguable probable cause to conduct the search and seize Mr. Lipsky's personal effects.

### 2. Count II—Prolonged Detention

Similar to Count I, Defendants argue that Plaintiff has not provided evidence of an official policy or unofficial custom which caused his alleged prolonged detention. To prove the existence of a policy for municipal liability purposes, a plaintiff may point to an "official policy" or a "deliberate choice of a guiding principle or procedure made by municipal official who has final

authority regarding such matters." *Hall v. Higgins*, 77 F.4th 1171, 1180 (8th Cir. 2023) (citing *Schaffer v. Beringer*, 842 F.3d 585, 596 (8th Cir. 2016)); *see also Pembaur*, 475 U.S. at 483 ("[M]unicipal liability attaches where…a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."). Thus, a single decision by a municipal official can constitute official policy. *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 946 (8th Cir. 2017). But "liability attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* (quoting *Pembaur*, 475 U.S. at 481).

In Plaintiff's verified complaint, he refers to an apparent Hot Springs policy or custom which mandates the 8-hour imprisonment of an arrestee charged with DUI. (Doc. 1 PgID 7). However, he has not provided the Court a copy of the claimed policy or custom, nor has nor has he provided any information regarding the origins of the claimed policy or custom or the identity of the individual or individuals who implemented it. Defendants, as the moving parties, can either produce evidence that there is no such custom or policy, or "point out that the nonmoving party lacks the evidence to prove" that there is such a custom or policy. *Bedford v. Doe*, 880 F.3d 993, 997 (8th Cir. 2018). The Defendants did the latter. Then, to survive summary judgment, Mr. Lipsky "must respond by submitting evidentiary materials of specific facts showing the presence of a genuine issue for trial," here that the City of Hot Springs has a policy or custom that all DUI arrests carry an 8-hour mandatory imprisonment. *Id.* Mr. Lipsky has not submitted any evidence beyond his verified complaint alleging that a "DUI arrest also carries an 8-hour mandatory imprisonment." (Doc. PgID 7). That claim alone is not enough evidence from which a jury could reasonably find in his favor. *See Thomas* 483 F.3d at 527 (Holding that allegations alone are insufficient to survive summary judgment); *Beck*, 253 F.3d at 333 ("Like any other civil litigant,

[plaintiff] was required to respond to [defendants'] motion[] with specific factual support for his claims to avoid summary judgment.").

As stated above, proving the existence of a municipal policy or custom that was the "moving force" behind a constitutional violation is an essential element of Plaintiff's official capacity prolonged detention claim. *Monell*, 436 U.S. at 694. Ultimately, Plaintiff bears the burden to prove the elements at trial, so his failure to provide any admissible evidence of a Hot Springs policy or custom which caused his alleged constitutional injury "renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Because Plaintiff, the nonmoving party in this case, has failed to present enough evidence that a jury could reasonably find in his favor, Defendant is entitled to judgment as a matter of law on this issue. *Bedford*, 880 F.3d at 997. Accordingly, Defendants' motion for summary judgment on Mr. Lipsky's § 1983 claim against Officer Cronin in his official capacity based on the alleged prolonged detention of Mr. Lipsky is granted.

## C.  § 1983 Claims Against the City of Hot Springs Directly

### 1.  Count III—Negligent hiring, training, and supervision

Municipalities may also be sued directly under § 1983 and in determining liability the Court applies the same analysis it uses when analyzing official capacity claims. *See Monell*, 436 U.S. at 690 (concluding that "municipalities and other local governing bodies...can be sued directly under § 1983...[when] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."). Therefore, like Counts I and II, Plaintiff must demonstrate that a Hot Springs policy or custom, here deficient, hiring, training, or supervision, caused his alleged constitutional violations.

There are "limited circumstances" where a municipality's deficient hiring, or its failure to train and supervise its employees may constitute a municipal policy for which it can be liable. *See Connick*, 563 U.S. at 61; *B.A.B., Jr.*, 698 F.3d at 1040 (8th Cir. 2012); *Parrish*, 594 F.3d at 997. Municipal culpability for constitutional violations is "at its most tenuous" when based on deficient hiring or a failure to train and supervise and requires a showing that the city was "deliberately indifferent" to the rights of its citizens in hiring an individual or in adopting its training and supervision program. *See Connick*, 563 U.S. at 61; *B.A.B, Jr.*, 689 F.3d at 1040; *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997).

It is well established that § 1983 claims based on a failure to train requires a plaintiff to prove: "'(1) the training practices [were] inadequate; (2) the city was *deliberately indifferent* to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious choice by the city; and (3) an alleged deficiency in the ... training procedures actually caused the plaintiff's injury.'" *Id.* (quoting *Parrish*, 594 F.3d at 997 (8th Cir. 2010) (emphasis added)). Likewise, to prevail on a § 1983 claim based on a failure to supervise, a Plaintiff must establish: "(1) [the city] received notice of a pattern of unconstitutional acts committed by subordinates, (2) [d]emonstrated *deliberate indifference* to or tacit authorization to the offensive acts, (3) [f]ailed to take sufficient remedial action, and (4) [t]hat such failure proximately caused injury to [the plaintiff]." *Otey*, 121 F.3d at 1155 (emphasis added). In *City of Canton v. Harris*, Justice O'Connor reasoned that a less stringent standard of fault would be inconsistent with *Monell* as it "would result in *de facto respondeat superior* liability on municipalities...." 489 U.S. 378, 395, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (concurring in part and dissenting in part).

Thus, before it can be fairly said that inadequate training or supervision represents a policy for which a city is responsible, and for which a city may be held liable, the need for more or

16

different training or supervision must be "'so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *B.A.B., Jr.*, 689 F.3d at 1040 (quoting *Canton*, 489 U.S. at 388-89; *see also Connick*, 563 U.S. at 61 (quoting *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)) (Emphasizing that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."). In other words, a city may be deemed "deliberately indifferent" only when city policymakers are on notice that a deficiency in their training or supervision program is likely to cause city employees to violate citizens' constitutional rights and, in light of notice, choose to retain that program. *See Connick*, 563 U.S. at 61 (citation omitted) (reasoning that a city's "policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution.").

Similarly, in order to succeed on a claim against a municipality based on an isolated decision to hire a particular officer without adequate pre-employment screening, a plaintiff must show that the municipality's decision to hire the offending officer, was made with *deliberate indifference* as to its known or obvious consequences thereby causing their injury. *Atkinson*, 709 F.3d at 1216 (emphasis added). To do so, a plaintiff must show that the officer was "highly likely to inflict the particular injury suffered by plaintiff" and "the connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Morris v. Crawford County*, 299 F.3d 919, 922 (8th Cir. 2002) (quoting *Bryan Cty.*, 520 U.S. at 412). This requires evidence of prior complaints or misconduct in an applicant's background that are

17

"nearly identical to the type of officer misconduct that caused the [alleged] constitutional deprivation." *Id.* at 923.

Here, the city argues that the record is devoid of any evidence supporting a claim that the named-Defendant were hired, trained, or supervised with "deliberate indifference." The Court agrees. Plaintiff has not provided any evidence showing that City of Hot Springs acted with "deliberate indifference" regarding the training and supervision of its police officers. In fact, there is nothing in record demonstrating that the City of Hot Springs was even on notice of any deficiency in its training or supervision policies, let alone that it consciously decided to retain such a policy in light of its likelihood to cause constitutional violations. Likewise, Plaintiff has not provided any evidence demonstrating that the hiring of the named-Defendants was done with "deliberate indifference." The only misconduct identified by Plaintiff in any of the three named-Defendants backgrounds is that Officer Cronin was investigated for sexual assault as a teenager which has no relation to the injuries alleged by Plaintiff in the present case.

*Monell*, its progeny, and Eighth Circuit precedent make clear that proving the hiring, training, or supervision of the named-Defendants was done with "deliberate indifference" is an essential element of Plaintiff's negligent hiring, training, and supervision claims. *Connick*, 563 U.S. at 61; *B.A.B., Jr.*, 698 F.3d at 1040; *Atkinson*, 709 F.3d at 1216; *Morris*, 299 F.3d at 922. Ultimately, Plaintiff bears the burden to prove the elements at trial, and thus his failure to provide any admissible evidence that demonstrates deliberate indifference "renders all other facts immaterial." Accordingly, Defendants' motion for summary judgment on Plaintiff's § 1983 claim against the City of Hot Springs directly alleging negligent hiring, training, and supervision is granted.

### D. Individual Capacity § 1983 Claims

Claims brought against municipal employees in their individual capacities have several differences, relevant here, is that officers sued under § 1983 in their individual capacities can raise qualified immunity as a defense. *Riis*, 458 F.Supp.3d at 1163. Qualified immunity protects individual capacity Defendants from liability "unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009); *Plumhoff v. Rickard*, 572 U.S. 765, 778, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014) ("An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct."). The qualified immunity analysis is therefore a two-step inquiry: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Hanson v. Best*, 915 F.3d 543, 547 (8th Cir. 2019). Courts have discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first," *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), but if the answer to either question is no, the officials are entitled to qualified immunity. *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009). Here, the Court will first address the "clearly established" prong as it is dispositive. *See Smith v. City of Minneapolis*, 754 F.3d 541, 546 (8th Cir. 2014).

"[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff*, 572 U.S. at 778-79. To be "clearly established," a legal principal or rule must be "settled law" with a "sufficiently clear foundation." *District of Columbia v. Wesby*, 583 U.S. 48, 63, 138 S.Ct. 577, 199 L.Ed.2d 453 (2018); *Hunter v. Bryant*,

502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).  It is not sufficient that the rule is merely suggested by then-existing precedent, it "must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 583 U.S. at 63.  In other words, "existing law must have placed the constitutionality of the officer's conduct 'beyond debate'" such that those who violate it are either "'plainly incompetent or those who knowingly violate the law.'" *Id.* at 63 (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

This standard further requires that the particular rule the plaintiff seeks to apply clearly prohibits the officer's conduct in the particular circumstances. *Plumhoff*, 572 U.S. at 779.  This demands a "high 'degree of specificity'" which is "especially important in the Fourth Amendment context" given its imprecise nature and factually dependent analysis. *Wesby*, 583 U.S. at 63-64 (citing *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S.Ct. 305, 193 L.Ed.2d 255 (2001)); *see also Ziglar v. Abbasi* 582 U.S. 120, 151 S.Ct. 1843, 198 L.Ed.2d 290 (2017) (recognizing the need for specificity because "it may be difficult for an officer to know whether a search or seizure will be deemed reasonable given the precise situation encountered.").  Otherwise, the rule is not one that "every reasonable official" would know. *See Plumhoff*, 572 U.S. at 778-79; *Reichle v. Howards*, 566 U.S. 658, 665-66, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012).  While this does not mean there needs to be a case directly on point, "a body of relevant case law" is usually necessary to "'clearly establish' the answer" with respect to probable cause. *See Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004).

Although the defendant bears the burden to prove his or her immunity, the plaintiff must demonstrate that the law confirming the alleged constitutional deprivation is "clearly established." *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007); *Sparr v. Ward,* 306 F.3d 589, 593

(8th Cir. 2002); *Hanson*, 915 F.3d at 548.  Thus, to meet that burden in the instant case, Mr. Lipsky must identify "controlling authority" from the Supreme Court or Eighth Circuit case law or "a 'robust consensus of cases of persuasive authority'" that places the constitutional questions "beyond debate." *Hanson*, 915 F.3d at 548 (quoting *De La Rosa v. White*, 852 F.3d 740, 746 (8th Cir. 2017)).  In this case, he has done neither.

### 1.  Count I—Unlawful Search and seizure

It is well established that warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 173 L.ed.2d 485 (2009) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)).  Relevant here is the automobile exception and the search incident to lawful arrest ("SILA") exception.  The automobile exception permits warrantless searches of an automobile and seizures of contraband where there is "probable cause to believe that an automobile contains contraband" or evidence of criminal activity.  *United States v. Evans*, 830 F.3d 761, 767 (8th Cir. 2016).  SILA, although similar to and often overlaps with the automobile exception, is distinct in that it authorizes warrantless searches of an automobile and seizures of contraband "when the arrestee is unsecured and within reaching distance of the passenger compartment…[or] when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'"  *Arizona*, 556 U.S. at 343 (quoting *Thorton v. United States*, 541 U.S. 615, 632, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004) (SCALIA, J., concurring in judgment)).  Under these standards, "probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place."  *United States v. Murrillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017) (citation omitted).  Alternatively, "where the officers act on a mistaken belief that probable cause exists, if that mistake is 'objectively reasonable,' arguable

21

probable cause exists." *Brown v. City of St. Louis*, 40 F.4th 895, 900-01 (8th Cir. 2022) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

Defendants argue that, based on the totality of the circumstances, Officer Cronin and Captain Wainman had at a minimum, arguable probable cause to search Mr. Lipsky's vehicle and seize his personal affects.  Plaintiff has not responded to Defendants arguments, nor has he demonstrated to the Court "controlling authority" that the search of his vehicle and seizure of his personal effects violated a "clearly established" constitutional right when applied to the particular circumstances.

Although Eighth Circuit opinions do not always expressly state as much, the terms "probable cause" and "arguable probable cause" are not interchangeable, and each term serves a different purpose within the qualified immunity analysis.  *City of St. Louis*, 40 F.4th at 900. Considerations of actual probable cause are assigned to the constitutional violation prong of the qualified immunity analysis, whereas considerations of arguable probable cause are "properly part of the resolution of qualified immunity's second prong, the clearly established prong."  *Id.* (citing *Ross v. City of Jackson*, 897 F.3d 916, 921 (8th Cir. 2018)); *Schaffer*, 842 F.3d at 592.  Thus, "[e]ven if an officer [searches] an individual without *actual* probable cause—in violation of the Constitution—he has not violated that individual's 'clearly established' rights for qualified immunity purposes if he nevertheless has arguable probable cause to [conduct the search]."  *City of St. Louis*, 40 F.4th at 900 (citing *Toole v. City of Atlanta*, 798 F.Appx 381, 385 (11th Cir. 2019). Whether a law enforcement officer had probable cause or arguable probable cause at the time of the search is a question of law.  *See Walker v. Peterson*, Civ. No. 12-4078, 2013 WL 6173779, at *2 (citing *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013).  Because the Court finds that, under the present set of facts, Officer Cronin and Captain Wainman had arguable probable cause

22

to search Mr. Lipsky's vehicle and seize his personal effects and thus are entitled to qualified immunity, the Court will not address the question of whether they had actual probable cause. *See Ross*, 897 F.3d at 921 (citation omitted) (explaining that courts may resolve a qualified immunity analysis on the clearly established prong where arguable probable cause exists.).

Under *Arizona v. Gant*, "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" 556 U.S. at 343 (quoting *Thorton*, 541 U.S. at 632 (SCALIA, J., concurring in judgment)). There are many cases, as when the individual is arrested for a traffic violation, in which there will be no reasonable basis to believe the vehicle contains relevant evidence. *See, e.g., Atwater v. Lago Vista,* 532 U.S. 318, 324, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001); *Knowles v. Iowa,* 525 U.S. 113, 118, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998). But in others, as when a recent occupant of a vehicle is arrested for drug related offense, "the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *See Arizona* 556 U.S. at 344.

Here, Officer Cronin clocked Mr. Lipsky traveling at 30 miles per hour above the posted speed limit. During the ensuing encounter, he observed that Mr. Lipsky was slurring his words, his eyes were droopy, he performed and failed all but two field sobriety tests, he had a large amount of cash in his wallet, and throughout the entire encounter he was swaying and rubbing his face and eyes. Defendants contend that based on Officer Cronin's training and experience, he had probable cause to believe that Mr. Lipsky was under the influence of a central nervous system depressant while driving, but at that time, he was unsure which depressant it could have been. Defendants further assert that since Mr. Lipsky was driving at the time Officer Cronin pulled him over, a reasonable officer could conclude that probable cause existed to believe that evidence relevant to

the crime of arrest—i.e., the unknown central nervous system depressant—might be found in the vehicle. Plaintiff has not responded to Defendants' arguments, nor has he provided the Court with *any* relevant case law which "clearly establishes" a lack of probable cause in this particular situation. *See Brosseau*, 543 U.S. at 199.

In viewing the above facts in the light most favorable to Plaintiff, the Court finds that Officer Cronin and Captain Wainman had arguable probable cause to search Mr. Lipsky's vehicle and seize his personal effects. This was not a situation where Mr. Lipsky was arrested for a traffic offense and no other facts were present to warrant a belief that the vehicle contained contraband. Officer Cronin made a lawful DUI arrest. Defendants had probable cause to believe Mr. Lipsky was intoxicated but could not identify what intoxicant it could have been. Based on the totality of the circumstances, Officer Cronin and Captain Wainman reasonably concluded that they had probable cause to believe that evidence related to the crime of arrest was in Mr. Lipsky's vehicle. Even though this may have been a mistaken belief, the Court finds that the mistake was "objectively reasonable," and thus Officer Cronin and Captain Wainman are entitled to qualified immunity on Mr. Lipsky's unlawful search and seizure claims. Therefore, Defendants' motion for summary judgment on Plaintiff's § 1983 unlawful search and seizure claim against Officer Cronin and Captain Wainman in their individual capacities is granted.

## 2. Count II—Prolonged Detention

It is well established that "[d]etention [in jail]...is a type of seizure of the person to which Fourth Amendment protections attach." *See Alcocer v. Mills*, 906 F.3d 944, 953 (11th Cir. 2018). Further, "[t]he continuation of even a lawful arrest violates the Fourth Amendment when the police discover additional facts dissipating their earlier probable cause." *Nieters v. Holtan*, 83 F.4th 1099, 1108 (8th Cir. 2023) (quoting *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986)).

24

In the instant case, after lawfully arresting Mr. Lipsky and transporting him to the Hot Springs Police Department, Officer Cronin obtained a voluntary breathalyzer and urine sample from Mr. Lipsky, both of which came back negative. Officer Cronin then transported Mr. Lipsky to the Fall River County Jail where he underwent a drug recognition evaluation and provided a voluntary blood sample which was sent to the State Health Lab for further testing. Although the results of the blood test were not received until later, the drug recognition evaluator concluded that Mr. Lipsky "was not currently under the influence of a drug." In spite of the above information, Mr. Lipsky then remained in jail for at least eight hours.

The Court has already ruled that Officer Cronin had probable cause to arrest Mr. Lipsky for DUI. *Borgman v. Kelley*, 646 F.3d 518, 523 (8th Cir. 2011) (quoting *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (Stating that a law enforcement officer has probable cause "when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'"). Officer Cronin clocked Mr. Lipsky's truck traveling at 30 miles per hour above the posted speed limit, Mr. Lipsky failed all but two of the field sobriety tests, he could not remember if he stopped at the break check at the top of the bypass, he had a large amount of cash in his wallet, and he was slurring his words, swaying, and rubbing his face and eyes throughout the entire encounter.

That said, probable cause to make a warrantless arrest is not the end of the matter. Just as "probable cause may cease to exist after a warrant is issued," *United States v. Grubbs*, 547 U.S. 90, 95 n.2, 126 S.Ct. 1494, 164 L.Ed.2d 195 (2006), it may also dissipate after an officer makes a warrantless arrest. *See McConney v. City of Houston*, 863 F.2d 1180, 1185 (5th Cir. 1989) ("[O]nce a responsible officer actually does ascertain beyond a reasonable doubt that one who has been so arrested is not intoxicated, the arrestee should be released."); *Nicholson v. City of Los*

*Angeles*, 935 F.3d 685, 691 (9th Cir. 2019) ("[A] person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated."). This Fourth Amendment standard does not place an affirmative and independent duty on police officers to "continually reassess the matter of probable cause in warrantless arrest cases." *Barnett v. MacArthur*, 956 F.3d 1291, 1301 (11th Cir. 2020). But, when "officers seek and obtain information which shows beyond a reasonable doubt that the arrestee is not intoxicated—in other words, that probable cause to detain no longer exists—the Fourth Amendment requires that the arrestee be released." *Id.* at 1299.

In viewing this record in the light most favorable to Mr. Lipsky and drawing all reasonable inferences in his favor, a reasonable jury could find that the continued imprisonment of Mr. Lipsky violated his "clearly established" Fourth Amendment rights. A reasonable jury could find that even though Officer Cronin initially had probable cause to arrest Mr. Lipsky, Officer Cronin sought out and discovered information demonstrating that Mr. Lipsky was not intoxicated—at least at that time—showing that there was no longer probable cause to continue holding Mr. Lipsky. His breathalyzer and urine test both came back negative, and a drug recognition evaluator concluded he was not intoxicated. However, "the injuries complained of are not solely attributable to the actions" of Officer Cronin. *See Mervilus v. Union County*, 73 F.4th 185, 196-97 (3rd Cir. 2023) (quoting *Barrett v. Orange Cty. Human Rights Comm'n*, 194 F.3d 341, 350 (2nd Cir. 1999); *see also Speer v. City of Wynne*, 276 F.3d 980, 986 (8th Cir. 2002) (citing *Garcia v. Salt Lake County,* 768 F.2d 303, 310 (10th Cir. 1985) (Holding that "the combined actions of multiple officials or employees [] give rise to a constitutional violation…but no one individual[] [defendant's] actions are sufficient to establish personal liability for the violation.").

Of the three named defendants sued in their individual capacities, only Officer Cronin was involved in the alleged prolonged detention. That said, the injuries complained of are not

26

"solely attributable" to his actions.  After lawfully placing Mr. Lipsky under arrest, Officer Cronin initially brought him to the Hot Springs Police Department where he obtained a urine sample and breathalyzer.  At that time, even though the tests came back negative, that was insufficient to show that Mr. Lipsky was not intoxicated.  Based on Officer Cronin's on-the-scene assessment of Mr. Lipsky, he believed him to be under the influence an unknown central nervous system depressant.  While the negative tests slightly tip the scales, they do not establish that Mr. Lipsky was not intoxicated, especially when Officer Cronin did not know what illicit substance to test for.

At this time, Mr. Lipsky was still being charged with DUI, speeding, and reckless driving, and Officer Cronin transported Mr. Lipsky to Fall River County Jail.  Once at the County Jail, a voluntary blood sample was obtained and sent to the lab for testing.  Mr. Lipsky then underwent a drug recognition evaluation.  In the Court's view, once the drug recognition evaluator concluded that Mr. Lipsky was not intoxicated, that information, in addition to the negative breathalyzer and urine test was enough to show that Mr. Lipsky was not intoxicated at that time.  However, after the conclusion of the drug recognition evaluation, Mr. Lipsky was no longer in Officer Cronin's custody.  After the drug recognition evaluation, Officer Cronin called "Magistrate Clerk" Carol Foster who set the bond at $10,000 after being notified of what happened and of the charges Mr. Lipsky was facing.  Magistrate Clerk Carol Foster is apparently a Magistrate and a Clerk for the city of Hot Springs.  Officer Cronin then told the jailer of the bond and charges and left Mr. Lipsky in the custody of the jail staff where he then remained for 8-hours.

In viewing these facts in the light most favorable to Plaintiff, the Court determines that Officer Cronin's individual actions do not form the basis for a prolonged detention claim in violation of the Fourth Amendment.  Instead, the conduct that forms the basis of Plaintiff's alleged prolonged detention claim largely occurred while he was in the custody of unidentified Fall River

County jail staff who are not parties to this suit. This is not a case like *Nieters*, where the defendant—after initially making a reasonable mistake that probable cause existed—arrested the plaintiff and brought him to jail for booking even after learning that no probable cause existed. 83 F.4th at 1107-08. The defendant in *Nieters* was acting alone and it was his conduct which gave rise to the plaintiff's unlawful seizure claim. Nor is it case like *Barnett*, where not only was the Officer's on-the-scene assessment insufficient to establish probable cause for the arrest, but the officer also furthered the unlawful arrest at the police station where she ordered a urine test in spite of admitting that she had no evidence the plaintiff was impaired. 715 Fed.Apex at 907-08. The present case is more analogous with *Garcia*, where after admitting an unconscious individual to the jail, several jail staff failed to monitor his condition ultimately resulting in his death. 768 F.2d at 308-10. While no individual staff member's actions were sufficient to impose individual liability, the cumulative effect of what they did gave rise to the constitutional violation. *Id.*

An officer's "on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of a crime, and for a brief period of detention to take the administrative steps incident to arrest." *Gerstein v. Pugh*, 420 U.S. 103, 113–14, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Here, Officer Cronin's interaction with Mr. Lipsky was sufficient to establish probable cause to believe that Mr. Lipsky was driving under the influence of an unknown central nervous system depressant. While in his custody, although Officer Cronin discovered some information tending to show he was not intoxicated, it was not enough to show that probable cause to continue holding him no longer existed. It was not until the conclusion of the drug recognition evaluation that probable cause dissipated, and at that time, Mr. Lipsky was left in the custody of unidentified Fall River County jail staff who then continued to hold him for 8-hours. This is a situation where the combined actions of multiple officials or employees gave rise to the alleged prolonged

28

detention, but no one individual defendant's actions are sufficient to establish personal liability. Further, of the actions that are attributable to Officer Cronin, Plaintiff has not provided *any* relevant authority demonstrating that he violated a "clearly established" right. The Court finds that Officer Cronin is entitled to qualified immunity on Plaintiff's § 1983 individual capacity claim based on the alleged prolonged detention. Accordingly, Defendant's motion for summary judgment on Plaintiff's § 1983 prolonged detention claim against Officer Cronin in his individual capacity is granted.

### 3. Count III—Negligent hiring, training, and supervision

Similar to Counts I and II, Defendants argue that Plaintiff has not provided any evidence supporting a claim that negligent hiring, training, or supervision caused any "clearly established" constitutional injury. Again, Plaintiff has not responded to these arguments, nor has he provided the Court with *any* relevant case law which demonstrates a violation of a "clearly established" right.

A supervisor can be held liable for a subordinate's constitutional violation only if he directly participated in the constitutional violation or if his failure to train or supervise the offending officer caused the deprivation. *Otey*, 121 F.3d at 1155. The only alleged constitutional deprivation that a supervisor participated in was the search of Mr. Lipsky's vehicle. However, while it is true that Captain Wainman did participate in the search of Mr. Lipsky's vehicle, the Court has already found that at a minimum, arguable probable cause existed. Thus, even if any deprivation did occur, it was not clearly established, and Captain Wainman is entitled to qualified immunity.

If a supervisor did not directly participate in an alleged constitutional deprivation, before being held liable for a subordinates actions a plaintiff must show that the supervisor: "(1) Received notice of a pattern of unconstitutional acts committed by subordinates; (2) [d]emonstrated

29

deliberate indifference to or tacit authorization of the offensive acts; (3) [f]ailed to take sufficient remedial action; and (4) [t]hat such failure proximately caused injury to [Plaintiff]." *Id.*

Likewise, to support a failure to train claim, a plaintiff must prove: "(1) the [Defendant's] training practices were inadequate; (2) the [Defendants were] deliberately indifferent to the rights of others in adopting them, such that the 'failure to train reflects a deliberate or conscious choice by [Defendants]; and (3) an alleged deficiency in the training procedures actually caused the plaintiff's injury." *B.A.B., Jr.*, 698 F.3d 1037, 1040 (8th Cir. 2012). Quite simply, there is no evidence in the record supporting any of these elements. There is nothing in record demonstrating that Police Chief Michael Close or Captain Wainman were on notice of any deficiency in its training or supervision practices, let alone that they consciously decided to retain such a policy in light of its likelihood to cause constitutional violations.

Finally, a claim for deficient hiring requires a showing that decision to hire the offending officer, was made with deliberate indifference as to its known or obvious consequences thereby causing their injury. *Atkinson*, 709 F.3d at 216 (8th Cir. 2013). This requires evidence of prior complaints or misconduct in an applicant's background that are "nearly identical to the type of officer misconduct that caused the [alleged] constitutional deprivation." *Morris*, 299 F.3d at 923 (quoting *Bryan Cty.*, 520 U.S. at 412). Here, Plaintiff does not specify which individual Defendant was responsible for hiring Officer Cronin, and even if he did, the only misconduct identified by Plaintiff in any of the three named-Defendants backgrounds is that Officer Cronin was investigated for sexual assault as a teenager which has no relation to the injuries alleged by Plaintiff in the present case.

Plaintiff has failed to show that Defendants' hiring, training, or supervision of Officer Cronin amounted to deliberate indifference in violation of a "clearly established" constitutional

right.  The Court finds that Chief Close and Captain Wainman are entitled to qualified immunity from Plaintiff's individual capacity § 1983 claims based on negligent hiring, training, and supervision.  Accordingly, Defendants' motion to dismiss Plaintiff's § 1983 individual capacity claims based on negligent hiring, training, and supervision is granted.

## V.     CONCLUSION AND ORDER

For the reasons state above, it is hereby ORDERED that:

1. Defendants' motion for summary judgment on all of Plaintiff's remaining claims pursuant to Fed. R. Civ. P. 56 is GRANTED.

DATED this 31st day of March, 2025.

BY THE COURT:

LAWRENCE L. PIERSOL
United States District Judge